## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| PHARAMOND CONILLE, YVES | ) |
| RIGAUD, JACQUES LARAQUE | ) |
| MICHELET AUGUSTE, | ) |
| GUY RAPHAEL, JEAN LOUIS, | ) |
| JAMES SHEA, ELGA BERNARD, | ) |
| HODELIN AUBOURG, GABRIEL | ) |
| BERNARD, CARMESUZE  MICHAUD, | ) |
| KALLOT JEAN-FRANCOIS, and | ) |
| LOCAL 402, AMERICAN | ) |
| FEDERATION OF STATE, COUNTY, | ) |
| AND MUNICIPAL EMPLOYEES, | ) |
| a Labor Organization | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT for** |
| COUNCIL 93, AMERICAN | ) **INJUNCTIVE and** |
| FEDERATION OF STATE, COUNTY, | ) **DECLARATORY** |
| AND MUNICIPAL EMPLOYEES, | ) **RELIEF and DAMAGES** |
| and AMERICAN FEDERATION OF | ) |
| STATE, COUNTY AND MUNICIPAL | ) **CA NO. _____** |
| EMPLOYEES, Labor Organizations, | ) |
| | ) |
| **Defendants** | ) |
| _____ | ) |

## INTRODUCTION

1.      This action seeks declaratory, injunctive, and other relief to redress violations of union members' equal voting, free speech, due process, and non-retaliation rights within the Union, and for needlessly destroying Plaintiffs' local union and the eligibility of its members for union office for a two-year period. The five sets of claims are:

   A.    That the provisions of the provisions of the Constitution of Council 93 ("Council 93") of the American Federation of State, County and Municipal Employees ("AFSCME") establishing the composition of its Executive Board violates the equal voting rights provisions of the Bill of Rights of both the AFSCME Constitution and

Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. 411(a)(1).

B.    That the dissolution (so called "deactivation") of AFSCME Local 402 ("Local 402") and involuntary transfer of all its members to other local unions without affording it the substantive and procedural due process rights guaranteed under Article IX, Section 35 of the AFSCME Constitution violated the electoral rights of its members under 29 U.S.C. 411(a)(2) and the AFSCME Constitution.

C.    That the "deactivation" of Local 402 constituted an unlawful act of retaliation against Local 402 and its members for their exercise of rights protected under 29 U.S.C. 411(a)(1) and 29 U.S.C. 411(a)(2) in violation of 29 U.S.C. 529.

D.    That the impending removal of Plaintiff Pharamond Conille ("Conille") from the Council 93 Executive Board constituted an unlawful act of retaliation for his exercise of rights protected under 29 U.S.C. 411(a)(1) in violation of 29 U.S.C. 529.

E.    That the removal of Conille from the Council 93 Executive Board violated the substantive and procedural due process rights guaranteed him 29 U.S.C. 411(a)(5) and under Article X of the AFSCME Constitution.

## JURISDICTION and VENUE

2.    This case arises under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 102; the National Labor Relations Act ("NLRA"), 29 U.S.C. 185; 28 U.S.C. §§ 1331, 1337; and alternatively under the common law of Massachusetts and this Court's pendent jurisdiction.

3.    All of the individual Plaintiffs are employed within this judicial district, by the Defendant Department of Developmental Services of the Commonwealth of Massachusetts (DDS) (formerly operating under the name of the Department of Mental Retardation), located in Boston, Massachusetts.

4.    Local 402 is headquartered at 85 River Street in Waltham, Massachusetts ("Local 402"), within the Eastern District of Massachusetts.

## PARTIES

5.    Council 93 is the exclusive bargaining representative recognized by the Commonwealth of Massachusetts for all the employees of DDS, who include all the members of Local 402 transferred into other local unions, and all of the members of

2

seven other AFSCME local unions (Locals 17, 24, 554, 646, 651, 665 and 1730) into two of which, Locals 646 and 1730, they were transferred.

6.      At least until March 27, 2017 Plaintiff Local 402 was a local labor organization under state law, M.G.L. c. 150A, as an affiliate of AFSCME representing employees of DDS, by delegation of authority by Council 93, in certain matters of contract administration, including initial grievance processing and the execution of memoranda of understanding regarding practices at certain workplaces.

7.      Local 402 and other AFSCME subordinate bodies across the New England States of Massachusetts, New Hampshire, Maine, and Vermont are affiliates of Council 93.

8.      All the individual Plaintiffs are persons for whom Council 93 functions as the exclusive bargaining agent as were all of the members of Local 402, and, <u>as</u> are all of the members of Locals 17, 24, 554, 646, 651, 665 and 1730.

9.      All of the Plaintiffs are employed by DDS.

10.     As least up to and until March 27, 2017 Plaintiffs Carmesuze Michaud and Kallot Jean-Francois were members of Local 402.

11.     As least until March 27, 2017 Conille was a member of and the Vice-President of Local 402.  He would have been, as of the August 1, 2017 retirement of Local 402 President Raymond McKinnon, the highest elected officer of Local 402.

12.     Conille is also a member of the Executive Board of AFSCME Council 93.

13.     As least until March 27, 2017 Plaintiff Yves Rigaud was a member of and the Recording Secretary of Local 402.

14.     As least until March 27, 2017 Plaintiff Michelet Auguste was a member of and the Treasurer of Local 402.

15.     As least until March 27, 2017 Plaintiffs Guy Raphael, Jean Louis, James <u>Shea,</u> Elga Bernard, Jacques Laraque, Hodelin Aubourg and Gabriel Bernard were members and officers of Local 402 by virtue of being, along with Conille, Rigaud and August, members of its Executive Board.

16.     Council 93 is an intermediate labor organization, under 29 U.S.C §§ 402(i), (j)(5), and a subordinate body of AFSCME, headquartered at 8 Beacon St., Boston, Massachusetts.

17.     AFSCME is an international labor organization, under 29 U.S.C. §§ 402(i), (j)(1)
(2), or (3).  AFSCME is headquartered at 1625 L Street NW, Washington, D.C., and is
doing business in this judicial district through its agent Council 93.

18.     Both AFSCME and Council 93 are "mixed" labor organizations, representing
members employed by private employers, as well as those employed by public
employers, and are therefore subject to the jurisdiction of this Court under 29 U.S.C. §
152(5), 29 C.F.R. § 452.12 and 29 USC 412.

19.     All individual plaintiffs are currently members in good standing of unions which
are themselves members, affiliates and/or subordinate bodies of Defendants AFSCME
and/or Council 93.

## CLAIMS

### *COUNT I: EQUAL VOTING RIGHTS*

20.     The above-named individual Plaintiffs incorporate by reference herein the facts
set forth in the preceding paragraphs.

21.     All power of Council 93 is vested in its Council Convention, when it is in session
every other year for a few days' duration. Council Const., Art. V, § 1.

22.     At all other times, the Council and its staff are governed by an elected Executive
Board, comprised of members in good standing of constituent local unions. Council
Const., Art. VII, § 6.

23.     Council 93's staff of approximately 55 persons (excluding officers and executive
board members) services the members of the local unions, who do not have staff of their
own, and grievances may only proceed to arbitration if approved by Council 93.

24.     The AFSCME Constitution provides that the length of the terms of office in
subordinate bodies be governed by the constitutions of said bodies. AFSCME Const., Art.
IX, § 51 and App. D, § 1C.

25.     The members of Council 93's Executive Board are elected under the LMRDA,
Sections 401 *et seq*., 29 U.S.C. § 481 and under Article VI of the Council 93
Constitution.

26.     The Council 93 Constitution provided at all relevant times that the members of its
Executive Board were to be elected to four-year terms. Council Const., Art. VII, § 1(b).

27.     The Constitution of AFSCME provides:

The constitution of every subordinate body and any change of any nature in the constitution of any subordinate body shall conform to the provisions of the International Constitution **including the provisions of the Bill of Rights**…

AFSCME Const. Art. IX, § 49 (emphasis added).

28.     The AFSCME Constitution's Bill of Rights for all AFSCME members categorically and unconditionally prohibits weighted voting within the Union.  It commands:

All members shall have an equal right to vote and **each vote cast shall be of equal weight.**

AFSCME Const., Bill of Rights, ¶ 7 (emphasis added).

29.     Council 93 has an Executive Board of 50 persons.  Five of the members are officers of Council 93 elected at-large; the other 45 members are elected from sub-groupings designated therein. Council Const. Art. VI, §§ 4-6.

30.     Once elected to a board seat, each Council 93 board member is entitled to exercise a single vote on the Council, equally with every other Council 93 board member.

31.     The average voting power, derived by dividing the total number of members in the Council 93 region (over 45, 000) by the total number of the Board seats for which they vote (45, not counting officers) is 1,000 members per seat. See Exhibit I hereto.

32.     Under the Council 93 Constitution the system for the allocation of seats on its Board of Directors, if there is a system, permits discriminatory, and arbitrary and capricious outcomes, and deprives the members of Council 93 local unions of their equal voting rights guaranteed by the Bill of Rights in the AFSCME Constitution.  Statistical analysis of the Council 93 Constitution's allocation of all of the seats on its Executive Board discloses:

A.   Four seats on the Executive Board are allocated to the members of the aforementioned eight local unions (including Local 402) representing over 4,500 DDS employees, while the same number of seats, four, are allocated to the members of seven local unions representing only just over 1,500 employees of the Department of Mental Health of the Commonwealth of Massachusetts (DMH).  Council Const. Art. VI, § 6; see also Exh. 1 hereto. This results in members employed by DMH holding three times the voting power of members employed by DSS. *Id.* This consequently results in Caucasians having more voting power than racial minorities.

B.      10,300 members in Vermont elect a single board member while approximately 1,500 voters in seven local unions representing employees of the Department of Mental Health of the Commonwealth of Massachusetts ("DMH") elect four board members, that is, 375 voters per board member. This results in members employed by DMH holding 28 times the voting power of members employed by DSS. *Id.* This consequently results in members in proximity to Council 93's headquarters in Boston having far more voting power than those located further away. *Id.*

C.      Overall, the vast majority of voters in Council 93 local unions about whom both their number of members and number of representatives is known, that is, 23,500 out of 25,000, have less voting power than the minority of 1,500 of said voters about whom such information is known. *Id.*

D.      The other majority of the other 20,000 members also have less voting power than the minority of 1,500, though the precise extent to which that is the case and the precise number of such members is unknown. *Id.*

33.      The rationale by which Council 93's Constitution allocates representation on its Executive Board to the various groupings of the members of local unions within its region, if there is one, is unstated in the Constitution.  No Plaintiffs have seen an official written statement of that rationale.  No Plaintiffs have knowledge of the rationale.

34.      In Article V of its Constitution providing for biennial Convention delegate elections the Council 93 Constitution itself shows the simplicity of addressing and fixing the problem of weighted allocations of elected representatives to create equal voting rights for all voting members, as mandated by the AFSCME Constitution. Article V, § 6.

35.      The significantly weighted voting disparities in Council 93 board elections deprives all members of local unions affiliated with Council 93 of their equal representation rights under 29 U.S.C. 411(a)(2).

36.      The significantly weighted voting disparities in Council 93 board elections deprives all members of local unions affiliated with Council 93 of their equal representation rights under AFSCME's Bill of Rights for Union Members, ¶ 7, and are actionable under the NLRA, 29 U.S.C. 185.

37.      Alternatively, the significantly weighted voting disparities in Council 93 board elections deprives all members of local unions affiliated with Council 93 of their equal

representation rights under AFSCME's Bill of Rights for Union Members, ¶ 7, and are actionable under the common law of Massachusetts and the pendent jurisdiction of this Court

38.     On account of the aforementioned violations of law the Plaintiffs have suffered and continue to suffer a deprivation of their equal voting rights under the AFSCME Constitution Bill of Rights.

39.     The Council 93 Convention is next scheduled to convene in November 2017.

40.     The November 2017 Convention will be the last regularly scheduled Council Convention before its November 2019 Executive Board election at which Council 93 will have the opportunity to amend its Constitution to provide for an equal apportioning of Executive Board members or of their voting power, as is mandatory under the AFSCME Constitution and the LMRDA, and thereafter obtain a timely approval of its amendments from AFSCME.  Hence, there is sufficient time before the November 2017 Convention of Council 93 to assure that its November 2019 board election will be conducted in a manner consistent with the AFSCME Constitution Bill of Rights.

41.     The Council's allocation of heavily weighted voting rights disparities in Council elections also violates the 29 U.S.C. 481(e) bar against conducting elections in violation of lawful limits imposed by the Union's own Constitution.

42.     Unless preliminary injunctive and/or declaratory relief is granted, the Plaintiffs will continue to suffer said harm indefinitely, including but not limited to the date of the next elections of members of the Council 93 Executive Board, and throughout the year or years thereafter it would take to challenge said elections under Title IV of the LMRDA.

43.     The most sensible and practical way to avoid such a consequence is to direct Council 93 to consider reformation of and/or reform its Constitution at its upcoming November 2017 Convention to conform to provision guaranteeing equal voting rights under the AFSCME Constitution Bill of Rights.

## *COUNT II: RIGHT TO ARTICLE IX, SECTION 35 RIGHTS*

44.     All the Plaintiffs incorporate by reference herein the facts set forth in the preceding paragraphs.

45.     The AFSCME Constitution provides two procedures for the dissolution of a local union and involuntary transfer of its members into other local unions.

46.     One procedure may only be used when a local union has fewer than ten members for a period of three consecutive months. AFSCME Const. Art. IX, § 21.

47.     At all relevant times Local 402 had approximately 400 ("400") members.

48.     At no time prior to and including on March 27, 2017 did Local 402 have less than ten members for any period of three consecutive months.

49.     The other procedure may be used to merge or consolidate two or more local unions. Art. IX, § 35.

50.     There is no other constitutional authority or procedural provisions for what the Defendants have called "deactivation" in either the in the AFSCME Constitution or the Council 93 Constitution, or even a definition of the term "deactivation."

51.     The provision for merger or consolidation provides:

> Any subordinate bodies so directed to merge or consolidate **shall, at their request, be granted a hearing before the International Executive Board prior to the effective date of the required merger or consolidation**, and shall, in any case, be given a reasonable period of time in which to accomplish such merger or consolidation.

*Id*. (emphasis added*)*.

52.     The overwhelming majority of the 400 members of Local 402 are racial minorities.

53.     All but one of the officers of Local 402 are racial minorities.

54.     Local 402 was chartered by AFSCME, pursuant to its Constitution, on September 17, 1953, specifically to represent employees of the Department of Mental Retardation (whose name was subsequently changed to "DDA") who worked at the Fernald State School (hereinafter "Fernald").

55.     Commencing in 1990, DDS began transferring some of its operations from the Fernald State School to satellite locations: that is, some of the clients being served and some of Local 402's bargaining unit members serving the clients were moved into satellite facilities, which at that time were still being called "Fernald."

56.     Commencing in 1995, DDS continued the same transfer of work being done at the Fernald State School, that is, the persons being served and the Local 402 bargaining unit members serving them, to other satellite facilities, then and now designated as "Metro Residential Services" instead of as the "Fernald State School."

57.     Once transferred, Local 402 members continued to perform the same work for the same populations and for the same employer, DDS.

58.     During the 22 years of transition (1995 to 2017) Local 402 was informally treated by Metro Residential Services, a division of DDS, and by AFSCME and Council 93, as well, as the on-site representative of the employees not only at the Fernald State School, but also, as they opened, each of the eighteen, new satellite locations.

59.     In that capacity Local 402 continued to function as Council 93's designated on-site representative for all of the Fernald State School bargaining unit members – both those who remained working at the Fernald State School and those who were transferred away from it -- and later for all of the Metro Residential Services bargaining unit members exactly as it had before, that is, among other things, processing grievances, and negotiating policies and memoranda of understanding within the DDS workplaces.

60.     Both before and after the transfers of DDS work away from Fernald, Local 402 members were paid by DDS.

61.     During these 22 years, DDS withheld dues from the paychecks of Local 402 members who worked at the satellite locations and paid out the withheld dues to Council 93, AFSCME and Local 402.

62.     The Constitution of Local 402 provides that its officers shall be elected by vote of its members to terms of two years. Local 402 Const., Art. 6, § 1.

63.     The individual Plaintiffs listed above were elected to office in Local 402 effective October 2015.

64.     On or about March 27, 2017, Special Assistant Executive Director of Council 93 Mark Bernard notified Local 402 President McKinnon and Vice-President Conille by telephone that he had determined to "deactivate" Local 402 and transfer its members to other subordinate bodies.

65.     The sole expressed basis for the "deactivation" of Local 402 was that it no longer represented any members working at the sole work location designated in its charter, after all the employees working at Fernald were transferred to satellite locations.

66.     The sole stated ground for Local 402's "deactivation" ignored the fact that all approximately 400 Local 402 members continued to be represented by Local 402 for 22 years as they were transitioned to do the same work they had done at Fernald, for the

same employer DDS, first to satellite locations called "Fernald," and later to satellite locations whose name had been changed to "Metro Residential Services."

67.     In response to what Bernard informed McKinnon and Conille, on March 31, 2017 Local 402 requested that Defendants revise Local 402's Charter to suit what Bernard purported to call a defect: that is, to identify the 18 satellite locations specifically therein.

68.     Said request was denied due to the intervention/opposition of a representative of Council 93 who advised the Charter and Constitution Department of AFSCME that Local 402 had been "deactivated."

69.     However, in a number of instances Defendants, and in particular Council 93 did something entirely different from recommending immediate "deactivation" when other local unions found themselves in comparable circumstances.  These include but are not limited to the following instances:

A.     Defendants allowed another local union, Local 554, the majority of whose members are Caucasian, to reform its charter when it was faced a similar situation to that of Local 402: that is, when the Templeton facility at which most of its members worked closed in 2015 and Templeton's operations were moved to satellite facilities, Defendants assisted Local 554 in reforming its charter to reflect that change and to continue to operate.

B.     Defendants awarded a new constitution to another local union representing DDS employees, Local 646, into which Defendants ultimately transferred the majority of Local 402's members.  The relief granted to Local 646 was precisely the same relief requested by and denied to Local 402.  Said relief, to reform precisely the same defect they claimed required "deactivation" of Local 402, was granted Local 646 on May 1, 2017, shortly after denying the same relief to Local 402.

C.     Defendants allowed another local, Local 665, whose membership was largely Caucasian and which had lost the vast majority of its members in the fall of 2014 due to the member's workplace/facility being closed, to operate intact until the summer of 2017, at which time its President, who is Caucasian, resigned her office and its Vice-President, who is a racial minority, took over the presidency of the union.  It was then and only then that Defendants transferred the remaining members of Local 665 to another subordinate body.

70.      On April 4, 2017 Local 402 appealed to AFSCME President Saunders to allow their local to continue to represent its current members at their new work addresses.  In support of its appeal, it provided Saunders with petitions signed by a majority of the members of Local 402, and union cards signed by most of the petition signatories requesting that they be represented by Local 402.

71.      On May 3, 2017 Bernard notified DDS that Local 402 no longer existed, which in turn led DDS to revoke contractual rights allowing Local 402 President McKinnon to represent Local 402 members during half of his work day.

72.      On or about May 8, 2017 Local 402 appealed the aforementioned actions to Council 93's Executive Director Frank Moroney.

73.      After Council 93 failed to respond to Local 402's appeal, on May 25, 2017 Local 402 appealed to the Judicial Panel of AFSCME in the form of judicial charges against the actions and/or inaction of Bernard and/or Council 93.

74.      During April and/or May of 2017 Defendants transferred the members of Local 402 to two other subordinate bodies, and directed that the dues of the members of Local 402 be paid to those subordinate bodies.

75.      On May 28, 2017 Local 402 appealed to AFSCME Deputy Field Director Timothy Birch and AFSCME Secretary-Treasurer Elissa McBride, and again to AFSCME President Saunders, pursuant to Article IX, Section 35, that it be allowed to continue to operate as a subordinate body of AFSCME pending a hearing before the International Executive Board, and thereafter that Local 402 be allowed to continue to operate as a subordinate body of AFSCME.

76.      On or about June 2, 2017 Secretary-Treasurer McBride issued a "Notice" that the funds and records of Local 402 be sent to her.  She noted as her sole reason that Local 402 had been "deactivated."  Additionally, she stated said "Notice" was retroactive to March 27, 2017.

77.      The McBride "Notice" was indirectly provided to Local 402 on June 5, 2017.

78.      On or about June 7, 2017 (email dated June 9, 2017) Local 402 appealed through its legal counsel to AFSCME, asserting Local 402's objection concerning non-compliance with Section 35 and asking among other things that Local 402 be allowed to

continue to operate as a subordinate body of AFSCME pending a hearing before the International Executive Board.

79.     On June 9, 2017 AFSCME Judicial Panel Chairperson Richard Abelson formally denied Local 402's appeal.

80.     On June 12, 2017 AFSCME General Counsel Judith Rivlin sent a letter to Counsel for Local 402 in which she stated several reasons why any further exhaustion of internal union remedies would be futile.

81.     In her letter General Counsel Rivlin claimed that President Saunders had "… made the decision to deactivate Local 402…"  However, there is no record of any such decision by President Saunders, or, if he did make that decision, of when he did so, and/or whether he did so with or without the approval of the International Executive Board.

82.     Nonetheless, on June 12, 2017, Local 402 again requested that the matter be resolved internally. Local 402 has received no response to that request.

83.     As a consequence of the "deactivation" of Local 402, Council 93 has interpreted its Constitution and the constitutions of at least one of the local unions into which Local 402 members have been transferred to disqualify Conille, and by the same interpretation all members of Local 402 who have been involuntarily transferred to another local union, from being eligible for office in Council 93 and said local unions for a period of two years following Local 402's "deactivation," notwithstanding the contrary plain and unambiguous meaning of the Council 93 Constitution, Article VI, § 2, and contrary, as well, to its actual application to similarly situated members.

84.     Defendants' actions, including but not limited to –

    A.     Refusing and failing to update the Local 402 charter by amending it to accommodate the transfer of Local 402's work to workplaces other than Fernald, the only workplace referenced in its original charter, although AFSCME has amended the charters of other Locals in similar circumstances;

    B.     Unilaterally "deactivating" Local 402, without constitutional authority to take such action, as a power not granted by the Constitution to AFSCME or Council 93, although the Constitution does expressly grant the power to order merger or consolidation of local unions, after affording affected locals their due process rights and

protecting their members from involuntarily losing their eligibility to run for Council or AFSCME office; and

C.      Asserting an arbitrary and capricious denial of the plaintiffs' and all Local 402 members' eligibility to run for Council office for a period of two years --

constitute a violation of LMRDA Section 101(a)(2), 29 U.S.C. 411(a)(2).

85.      Said actions also constitute a violation of the AFSCME Constitution Bill of Rights, and the NLRA, 29 U.S.C. 185.

86.      Alternatively, the aforementioned actions constitute a violation of the AFSCME Constitution Bill of Rights, and the common law of Massachusetts.

87.      On account of the aforementioned violations of law the Plaintiffs have suffered and continue to suffer a deprivation of their right to nominate and vote for persons of their selection, and to run for office.

88.      Unless preliminary injunctive and/or declaratory relief is granted, the Plaintiffs will continue to suffer said harm indefinitely, and in particular in local union elections scheduled for October 2017 and/or October 2018.

### *COUNT III: RETALIATION FOR EXERCISE OF FREE SPEECH*

89.      All the Plaintiffs incorporate by reference herein the facts set forth in the preceding paragraphs.

90.      The AFSCME Constitution's assures:

Members shall suffer no impairment of freedom of speech concerning the operations of this union. Active discussion of union affairs shall be encouraged and protected within this organization.

AFSCME Bill of Rights, ¶ 2; see also ¶ 7.

91.      In 2011 Conille was nominated for a seat on and thereafter appointed to the Council 93 Executive Board as one of five appointed representatives of DDS employees; at the same time three members employed at DMH were also appointed to the Board. One of the conditions of his appointment, to which Conille was coerced and/or deceived into agreeing, was that he would resign after two years and be replaced by another member employed by DDS and belonging to another local union, which person had also been nominated for a seat on the Board.

92.     At the time of his appointment in 2011 to the Council 93 Executive Board, Conille discovered that, despite the fact that a large percentage (estimated to be 40%) of members under the jurisdiction of Council 93 are racial minorities, the overwhelming majority of its Board 50 members were Caucasians.

93.     Likewise, at the time of his appointment in 2011 to the Council 93 Executive Board, Conille discovered that all but one of the approximately 55 professional staff of Council 93, including but not limited to the Director and Assistant Director, were Caucasian.

94.     Commencing in 2011 Conille questioned Council 93 officers and staff concerning the fact that virtually all of Council 93's staff were Caucasian. Plaintiffs McKinnon, Rafael and other members of Local 402 also voiced their concern about the racial composition of the Council 93 staff.

95.     Commencing in 2012 Conille criticized the fact that some of the representatives to the Executive Board, Conille included, were appointed at the insistence of Council 93 staff rather than elected as mandated by the Council 93 and AFSCME Constitutions. Plaintiffs McKinnon, Rafael and other members of Local 402 including all of the Local 402 delegates to the Council 93 Convention also voiced their concern about the racial composition of the Council 93 staff.

96.     Commencing in 2012 Conille criticized the fact that the Council 93 Constitution mandates a methodology for electing members of the Executive Board that does not conform to the AFSCME Constitutional mandate that each vote cast shall be of equal weight, and that said methodology contributed to the fact that the composition of its Board was largely Caucasian. Plaintiffs McKinnon, Rafael and other members of Local 402 including all of the Local 402 delegates to the Council 93 Convention also voiced their concern about the racial composition of the Council 93 staff.  These complaints ultimately led to Council 93 President Owen not allowing Andrew Stacy of Local 554 to speak on this matter, and thereafter to Stacy's filing a charge against Owen.

97.     Commencing in 2012 Conille criticized the fact that the appointment rather than election of some members to the Council 93 Executive Board in violation of the Council 93 Constitution also contributed to the fact that the composition of its Board was largely Caucasian.  Plaintiffs McKinnon, Rafael and other members of Local 402 including but

not limited to Jude Felix also voiced their concern about this being a reason for the racial composition of the Council 93 Executive Board.

98.     Commencing in 2012 Conille criticized the fact that some of the representatives to the Executive Board, Conille included, were coerced by Council 93 staff in 2011 to agree to split a four-year term with another person nominated rather than serve a full four-year term as mandated by the Council Constitution.  Plaintiffs McKinnon, Rafael and other members of Local 402, and Stacy also voiced their concern about this matter.

99.     Commencing in 2012 Conille criticized the fact that by the actions described above in paragraphs 94-99 the staff and officers of Council 93 have maintained their control over the Executive Board and, by extension thereof, over the Council as a whole.

100.    In 2013 Conille declared that he would not give up his seat on the Executive Board to another DDS employee in the middle of his four-year term.

101.    In response Joseph DeLorey, General Counsel for Council 93 ("Delonrey"), told Conille that he would declare Conille's seat vacated.

102.    Thereafter, Conille filed charges against DeLorey regarding many of the matters described above in paragraphs 91-99.  As part and parcel thereof, Conille asserted that he had the right, under the AFSCME and Council Constitutions, and the LMRDA, as the holder of an elective office, to serve a full four-year term, notwithstanding his acquisition of elective office by appointment and agreement his (coerced and/or deceived) to vacate the office after two years.

103.    Conille requested that the International Judicial Panel hear the charge as would have been appropriate under Article IX, Section 38 of the AFSCME Constitution, but his request was denied and the matter was left before the Council 93 Judicial Panel.

104.    The Council 93 Judicial Panel denied his charges; however, notwithstanding the denial of his charges, much of the relief he had sought thereby was achieved, that is:

   A.   He was permitted to serve his full four-year term, as was Stacy who had also agreed to split his term; and

   B.   In 2015 the representatives to the Executive Board for DDS and DMH employees were selected by an election, not appointment.

105.    However, the relief he requested regarding equality in voting was not achieved.

15

106.    Indeed, quite to the contrary, after his charges were filed, Council 93 amended its Constitution to provide for even greater inequality in voting between DDS and DMH employees, and even less racial minority representation on its Executive Board, by allocating four seats to each, thereby institutionalizing the Board's racial discrimination against DDS locals whose members outnumbered DMH local members by a ratio of more than three to one, and whose members and officers were racial minorities in a higher proportion than those in DMH locals.

107.    Thereafter, AFSCME approved the amended Council 93 Constitution.

108.    In 2015 Conille and three other DDS members were elected to the Board by a vote of the members of Local 402 and the aforementioned seven other DDS local unions; at the same time four DMH members were elected to the Board by a vote of the members of the aforementioned seven DMH local unions.

109.    The persons elected reflected the disparity in racial compositions of the DDS and DMH local unions and their officers: three of the four DDS representatives were racial minorities; three of the four DMH representatives were Caucasian and the fourth Hispanic.

110.    The "deactivation" of Local 402 and the electoral disenfranchisement of Local 402 members was taken in reprisal against all of the members of Local 402 for the exercise of free speech rights by Conille and others protected under 29 U.S.C. 411(a)(1).

111.    The effect of the deactivation was to divide, half into one local and the other half into another, and thereby eliminate the voter base of the racial minorities who constituted the vocal leadership of Local 402, including but not limited to Conille.

112.    Defendants' actions against Local 402 and Conille (see Count IV) provide a clear warning to all other members represented by the Council that they, too, risk adverse consequences for speaking out against perceived injustice within the Council, chilling criticism, political opposition, and differences of opinion with the Council's executive officers.

113.    By –

  A.    Refusing and failing to allow Local 402 to continue to exist by the simple action of amending its charter to enlarge its jurisdiction to include the new workplaces to which all DSS employees have been transferred, and instead "deactivating" Local 402;

B.    Threatening to deny the entire Local 402 membership, and the memberships of

seven other local unions who had joined Local 402 in electing Conille as their Council

93 Executive Board representative, of his representation thereon for the duration of his

four-year  (from October 2015 to October 2019); and

C.    By declaring all the members of Local 402 to be ineligible to be nominated for

and hold union office for two years from the date of the "deactivation" of Local 402 –

and other actions described above Defendants have retaliated against the members of

Local 402 for exercising their LMRDA rights to free speech and to elect Conille, and to

support Conille's exercise of his LMRDA free speech right to oppose voter inequality

and marked racial disparities within the Council board and staff.

114.    The aforementioned acts of retaliation constitute violations of the LMRDA,

Sections 101(a)(1) & (2), 29 U.S.C. §§ 411(a)(1) & (2); 401(e), 29 U.S.C. § 481(e); and

609, 29 U.S.C. 529.

115.    The aforementioned acts of retaliation constitute violations of the AFSCME

Constitution Bill of Rights, and the NLRA, 29 U.S.C. 185.

116.    Alternatively, the aforementioned acts of retaliation constitute a violation of the

AFSCME Constitution Bill of Rights, and the common law of Massachusetts.

117.    On account of the aforementioned violations of law the Plaintiffs have suffered

and continue to suffer a deprivation of their rights of free speech and voting, and to be

free from retaliation on account thereof.

118.    Unless Local 402 is reinstated and permitted to exercise its rights under Article

IX, Section 35, the Plaintiffs will continue to suffer the chilling of the exercise of their

rights of free speech.

### *COUNT IV: RETALIATION FOR EXERCISE OF FREE SPEECH*

119.    The above-named individual Plaintiffs incorporate by reference herein the facts

set forth in the preceding paragraphs.

120.    On June 10, 2017 Council 93 President Charles C. Owen, Jr. ("Owen"), in the

presence of Council 93 Vice President Kevin Hanley, after a meeting of the Council 93

Executive Board, told Conille that he would no longer be a member of the Council 93

Executive Board because no more than one member from a single local union was

allowed to serve as a Council 93 board member.

121.    At the time Owen told this to Conille, a Caucasion Local 646 member and Conille were simultaneously serving on the Council 93 Executive Board after both had been elected to the Board by the votes of the members of the eight local unions composed of employees of DDS.

122.    On June 12, 2017 Conille wrote a protest to Council 93 that he had been wrongfully told by Owen that he would no longer be a member of the Council 93 Executive Board because no more than one member from a single local union was allowed to serve as a Council 93 board member.  Conille asserted his right under the AFSCME Constitution, Art. X, § 12, to a prior due process hearing before, in the first instance, the Council 93 Executive Board.

123.    On June 13, 2017 Owen denied that Conille had already been removed by him, but that, at the Council's September meeting, he would be subject to removal for two reasons: first, because he would be in violation of the Council 93 Constitution's "no two persons from the same local" rule, referred to in the preceding paragraphs, and second, because he would be ineligible to hold the office of Council board member until he had been a member in good standing for two years in the local union into which he had been transferred.

124.    In the past, two Caucasian members of the Executive Board of Council 93 who had previously been elected as Council 93 board members of different local unions, after becoming members of the same local union, have been permitted to continue to serve on the Board, to complete the full terms of their elected positions.

125.    The Constitution of Council 93 makes no provision for removal of elected Executive Board members due to said rule.

126.    Article X, Section 15 of the AFSCME Constitution provides for removal of an officer after being found guilty of charges.  Article X, Section 2 delineates the substantive grounds for charges and that "no other shall constitute the basis for the filing of charges."

127.    Furthermore Article X, Section 12 and other provisions provide a charged member/officer with extensive procedural rights, none of which would be accorded by simply deciding the matter at a meeting of the Council 93 Executive Board.

128.    The Defendants' aforementioned actions including but not limited to indicating their intent to remove Plaintiff Conille from the Council for the two years remaining in

his elected 4-year term, at the upcoming September 2017 Council meeting, without any basis in the AFSCME Constitution for such action, and thereby depriving Conille, other Local 402  members, and the members of the seven other local unions who elected Conille to represent them on the Council 93 Executive Board, of his opportunity to promote his agenda as a Council member for the remaining two years of his elected term violated Plaintiffs' free speech rights under LMRDA, Section 101(a)(2), 29 U.S.C. § 411(a)(2).

129.    The aforementioned acts of retaliation constitute violations of the LMRDA, sections 101(a)(1) & (2), 29 U.S.C. §§ 411(a)(1) & (2); and 401(c), 29 U.S.C. § 481(e).

130.    By the aforementioned actions the Defendants have violated the AFSCME Constitution Bill of Rights, ¶¶ 2 & 7, and the NLRA, 29 U.S.C. 185.

131.    Alternatively, by the aforementioned actions the Defendants have violated the AFSCME Constitution Bill of Rights, ¶¶ 2 & 7, and the common law of Massachusetts.

132.    On account of the aforementioned violations of law the Plaintiffs have suffered and continue to suffer a deprivation of their rights of free speech, and to be free from retaliation on account thereof.

133.    Unless preliminary injunctive and/or declaratory relief is granted, the Plaintiffs will continue to suffer said harm indefinitely.

### *COUNT V: VIOLATIONS OF DUE PROCESS IN DISCIPLINE*

134.    The Plaintiff Conille incorporate by reference herein the facts set forth in the preceding paragraphs.

135.    The aforementioned actions constitute a violation of LMRDA Section 101(a)(5), 29 U.S.C. 411(a)(5).

136.    The aforementioned actions constitute a violation of multiple provisions of Article X of the AFSCME Constitution, and the NLRA, 29 U.S.C. 185.

137.    Alternatively, the aforementioned actions constitute a violation of multiple provisions of Article X of the AFSCME Constitution, and the common law of Massachusetts.

138.    On account of the aforementioned violations of law Conille is threatened with a deprivation of his rights of due process and removal from elected office.

139.    Unless preliminary injunctive and/or declaratory relief is granted, the Conille will continue to suffer said harm indefinitely.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.       Schedule an expedited hearing to determine whether to grant Plaintiffs' forthcoming motion for preliminary injunction;

B.       Issue a preliminary injunction ordering the Defendant Council 93 to consider at the Convention of the Council in November 2017 to amend its Constitution to provide for an apportioning of the members of its Executive Board in accord with the requirements of the AFSCME Constitution and the LMRDA, and thereafter obtain a timely approval of its amendments from AFSCME, followed by a report to the Court on all actions taken by the Council.

C.       Issue a preliminary injunction ordering Council 93 to eliminate weighted voting in all of its manifestations, by implementing amendments ordered by the Court in its upcoming Convention.

D.       Issue a preliminary injunction ordering the Defendants to afford Plaintiff Local 402 the rights to which it is entitled under Article IX, Section 35 of the AFSCME Constitution; and in the interim declare the "deactivation" of Local 402 to be void and of no effect;

E.       Enjoin the Defendant Council 93 Executive Board from removing Conille from the Board until such time as the claims in this action have been finally determined on the merits.

F.       Enjoin the Defendants from determining that any Local 402 member is ineligible to run for office on account of not having been a member in good standing of the local union to which he/she was involuntarily transferred for two years as of the date of the next election.

G.       Issue a permanent injunction enjoining Defendant AFSCME to amend Local 402's charter to reflect workplace changes; restore and "reactivate" Local 402 to its former fully functional status; enjoin Council 93 from removing Plaintiff Conille from the Council 93 Executive Board, and to refrain from chilling his and other members' and officers' free speech rights;

H. Award any monetary damages suffered by the Plaintiffs;

I. Award Plaintiffs interest on any damages; and

J. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees;

K. Award such further relief as justice may require.

By their attorney,

s/ *Mark D. Stern*
Mark D. Stern
BBO #479500
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax  (617) 776-9250
email:markdsternpc@com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

By their attorney,

s/ _____*Mark D. Stern*

Mark D. Stern