UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PHARAMOND CONILLE, YVES RIGAUD,
JACQUES LARAQUE, MICHELET AUGUSTE,
GUY RAPHAEL, JEAN LOUIS, JAMES
SHEA, ELGA BERNARD, HODELIN
AUBOURG, GABRIEL BERNARD, CARMESUZE
MICHAUD, KALLOT JEAN-FRANCOIS,
MONIQUE MODAN, JOSEPH
BERLUS, MARIE AVELINE FORTUNAT,
VALENTINE DUBUISSON, FRANCHETTE
DORSAINVIL, SALLY ROGERS, STANLEY
SIENKIEWICZ, YVONNE VASSELL, and
LOCAL 402, AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES,

Plaintiffs,

v.

COUNCIL 93, AMERICAN FEDERATION
OF STATE, COUNTY, AND MUNICIPAL
EMPLOYEES, and AMERICAN FEDERATION
OF STATE, COUNTY, AND MUNICIPAL
EMPLOYEES,

Defendants.

CIVIL ACTION
NO. 17-11495-WGY

---

YOUNG, D.J.                                          May 15, 2018

**FINDINGS OF FACT AND RULINGS OF LAW**

**I. INTRODUCTION**

On August 14, 2017, Pharamond Conille ("Conille") and eighteen other members of Local 402 of the American Federation of State, County, and Municipal Employees ("AFSCME")

(collectively the "Plaintiffs") brought suit seeking emergency equitable relief against AFSCME Council 93 ("Council 93") and AFSCME International ("International") itself (collectively the "Defendants"). As amended, the Plaintiffs complained that they were denied equal voting rights as guaranteed by the AFSCME Constitution and federal law (count I), that Local 402 was being wrongfully deactivated (count II), and that Conille had been denied due process and been the victim of retaliation in violation of federal law and the AFSCME Constitution (counts III, IV, and V). Am. Compl. ¶¶ 23-142, ECF No. 25. Council 93 counterclaimed, alleging that upon its deactivation Local 402 had not turned over its assets, bank accounts, and books and records as it was required to do. Def.'s Answer & Countercl. 20, ECF No. 42.

As the action commenced virtually on the eve of an impending AFSCME convention, pre-trial sparring was vigorous. On September 22, 2017, the Plaintiffs filed a motion for partial summary judgment on counts I and II pursuant to Federal Rule of Civil Procedure 56(a), Pls.' Mot. Partial Summ. J., ECF No. 31, along with supporting memorandum of law, affidavit, and statements of disputed and undisputed facts, Mem. Law Supp. Pls.' Mot. Partial Summ. J., ECF No. 32; Conille Aff. Supp. Pls.' Mot. Partial Summ. J. ("Conille Aff."), ECF No. 33; Pls.' Statement Undisputed Material Facts Supp. Pls.' Mot. Partial

Summ. J., ECF No. 34; Statement of Facts in Dispute, ECF No. 54. On October 13, 2017, the Defendants filed a memorandum in opposition to the motion for summary judgment. Mem. Law Opp'n Defs.' Mot. Summ. J., ECF No. 48, along with supplemental statements of facts, Defs.' Statement Material Facts, ECF No. 49.

After oral arguments and a careful review of the record, this Court concluded that there existed a genuine issue of material fact in dispute as to count I. Trial Tr. 10/20/17 at 21:3-7; Trial Tr. 10/26/17 at 4:3-7:10. As to count II, this Court ruled that the Defendants' interpretation of their Constitution was reasonable and the Court would defer to them and their interpretation moving forward. Trial Tr. 10/20/17 at 22:21-23:5; Trial Tr. 10/26/17 at 7:11-23. The question still remained whether Local 402 was wrongfully deactivated. Trial Tr. 10/20/17 at 22:21-23:5; Trial Tr. 10/26/17 at 7:11-23.

A two-day non-jury trial commenced on October 26, 2017.

The Court promptly made its findings and rulings from the bench on December 4, 2017, focusing primarily on count I. This Court found that the Plaintiffs prevailed as to count I and ordered that the executive board of Council 93 be reconstituted and reorganized to allow for equal representation on or before December 31, 2018. Electronic Clerk's Notes, ECF Nos. 80, 81. The reorganization must be in effect and voted on by December

[3]

31, 2018. On that date the Defendants are instructed to file a report with the Court as to the reconstitution. Electronic Clerk's Notes, ECF No. 80. All actions of the executive board as of the date this matter was filed up to December 31, 2018 are declared provisional. Electronic Clerk's Notes, ECF No. 80. This Court also found facts and entered judgment for Council 93 and the International as to all other counts and dismissed the counterclaims. Id. The Court takes this opportunity to amplify and supplement its oral decision and makes the following findings of fact and rulings of law.

## II. FINDINGS OF FACT

### A. The Parties

Local 402 of the American Federation of State, County and Municipal Employees was a trade union of employees of the Commonwealth of Massachusetts, located at 85 River Street in Waltham, Massachusetts. Conille Aff. ¶ 1. Local 402's membership consisted of employees from the Department of Developmental Services ("DDS") who worked at the Fernald State School in Waltham, Massachusetts. Id. at ¶ 2. Most of those employees worked for a subdivision of DDS called either "Metro Residential Services" or "Northeast Residential Services." Id. at ¶ 3.

Conille was the Vice President of Local 402. Trial Tr. 10/26/17 at 29:9-11. Raymond McKinnon ("McKinnon") served as

Local 402's President prior to his retirement. Id. at 30:16-17. Yves Rigaud, Jacques Laraque, Michelet Auguste, Guy Raphael, Jean Louis, James Shea, Elga Bernard, Hodelin Aubourg, Gabriel Bernard, Conille, and McKinnon constituted the Executive Board of Local 402. Id. at 31:3-11. The rest of the Plaintiffs were members of Local 402. Id. at 31:3-32:8.

The AFSCME is an international labor union, and the parent of Council 93 and Local 402. Conille Aff. ¶ 9; Trial Ex. 1 at 9. Council 93's local unions represent members employed by both public and private employers in Massachusetts, Vermont, New Hampshire and Maine. Trial Ex. 8.

**B.   The AFSCME Constitution**

The Bill of Rights of the AFSCME Constitution states:

4. Members shall have the right to fair and democratic elections, at all levels of the union. This includes due notice of nominations and elections, equal opportunity for competing candidates, and proper election procedures which shall be constitutionally specified.
. . .

7. Members shall have the right to full participation, through discussion and vote, in the decision making processes of the union, and to pertinent information needed for the exercise of this right. This right shall specifically include decisions concerning the acceptance or rejection of collective bargaining contracts, memoranda of understanding, or any other agreements affecting their wages, hours, or other terms and conditions of employment. All members shall have an equal right to vote and each vote cast shall be of equal weight.

Trial Ex. 1 at 8-9.

[5]

Article V, Section 6 of the AFSCME Constitution provides:

> The International President, subject to the approval of the International Executive Board, shall issue charters to subordinate bodies of the Federation and shall, subject to an appeal to the International Executive Board, determine all matters relating to the jurisdiction and proper affiliations of subordinate bodies. The International President, subject to the approval of the International Executive Board, shall have the authority to negotiate and consummate, on such terms and conditions as the President considers appropriate, mergers or consolidations with organizations representing public employees or other appropriate groups of workers. The terms and conditions of such mergers or consolidations may include waiver of other provisions of this Constitution for such merging organizations for such periods of time as shall be set forth in the agreement of merger or consolidation.

Trial Ex. 1 at 43.

### C. Deactivation of Local 402

On March 27, 2017, Pat Glynn ("Glynn"), Director of Strategic Planning for Council 93, wrote a memorandum to Tim Birch, Area Field Service Director, regarding Locals 402, 646, 651, and 1730. Trial Ex. 38. In the memorandum, Glynn copied Frank Moroney ("Moroney"), Executive Director; Mark Bernard ("Bernard"), Special Assistant to the Executive Director; Gordon Blaquiere, Field Service Director; and Dave Moody, Business Manager. Id. Glynn requested, among other things, that Local 402 be deactivated because "[t]here [were] no employees working within the jurisdiction of Local 402" after the Fernald

Developmental Center in Waltham, Massachusetts closed on February 28, 2017. Id.

Bernard contacted Conille to inform him Council 93 would be recommending to the International that Local 402 be deactivated. Trial Tr. 10/26/17 at 114-15. After learning of the deactivation, McKinnon, on behalf of Local 402, wrote to a number of people and argued that Local 402 should not be deactivated. Id. at 116. He first wrote to the International's President, Lee Saunders, with signed petitions, requesting that Local 402 be kept intact and requesting to meet with him to discuss Local 402. Id.; Trial Ex. 12. McKinnon then sent a letter to Moroney, asking that he stop the deactivation process of Local 402. Trial Tr. 10/26/17 at 116; Trial Ex. 14.

Conille then wrote a letter to Nicole Whitehair from the Charter and Constitution Department to update Local 402's charter to include 17 community worksites Local 402 had been representing that were not included in the old charter, but that were currently still running. Trial Tr. 10/26/17 at 116-17. Nicole Whitehair responded that she could not update the charter because Council 93 opposed Local 402's getting a charter. Id. at 119.

On May 3, 2017, Bernard notified DDS's human resources that Local 402 was deactivated and advised them to stop collecting dues for Local 402. Id. at 119; Trial Ex. 13. Around June 5,

2017, Local 402 received a notice ordering it to return funds and properties to Council 93 because Local 402 was deactivated. Trial Tr. 10/26/17 at 119-20; Trial Ex. 16. Soon after, McKinnon filed charges with the AFSCME Judicial Panel against Bernard and Council 93 for interfering with their abilities as officers of Local 402 because of the email he sent to DDS's human resources. Trial Tr. 10/26/17 at 119-21; Trial Ex. 15. The Judicial Panel decided not to take any action on the charges filed. Trial Ex. 17.

Local 402 proceeded to retain legal counsel, attorney Mark Stern ("Stern"), who then wrote a letter to McBride, requesting that: (1) Council 93 rescind the instructions Bernard sent to DDS's human resources; (2) Council 93 recover and pay over the share of dues that were due to Local 402; and (3) Council 93 rescind its notice instructing Local 402 to return funds and properties to Council 93. Trial Tr. 10/26/17 at 123; Trial Ex. 18. General Counsel for the International responded to the letter, stating that it declined to acquiesce to Stern's requests, and that the decision to deactivate Local 402 was made in accordance with the AFSCME Constitution and that notice was sent to Local 402. Trial Tr. 10/26/17 at 123; Trial Ex. 19.

After the deactivation, members of Local 402 were dispersed between Local 646 and Local 1730. Trial Tr. 10/26/17 at 126.

### D. Conille's Election to Council 93's Executive Board

In November of 2011, a DDS delegate nominated Conille to serve as one of the DDS representatives on Council 93's Executive Board for a four-year term. Trial Tr. 10/26/17 at 49:24-50:3, 54:9-13. Rather than having an election, the election committee, the nominees, and General Counsel for Council 93, Joe DeLorey ("DeLorey"), reached a compromise in which five seats were allocated to DDS members on the Executive Board. Id. at 53. As part of the compromise, the nominees all agreed to share their four-year term with another DDS representative. Id. at 53-54. Each representative would serve two years and then step down. Id. at 53-54. Out of the eleven DDS members nominated, only seven remained, including Conille. Id. at 50, 53. Conille agreed to share a four-year term with another DDS representative, Lisa Smith ("Smith"). Id. at 146. Conille signed an agreement detailing that he would serve the first two years and Smith would serve the last two years. Id. at 147-49. Before his two-year term ended, DeLorey reminded Conille that he would need to step down from the Executive Board in accordance with the arrangement. Id. at 66; Trial Ex. 36. Conille refused to step down because he felt the agreement was illegal, and insisted he be allowed to complete a four-year term in accordance with the AFSCME Constitution. Trial Tr. 10/26/17 at 69-70. Conille subsequently filed charges with the Judicial

[9]

Panel against DeLorey for interfering with the election process. Id. at 70; Trial Ex. 36. The Judicial Panel found that the charges were not sustained, but allowed Conille to complete a four-year term on the Executive Board. Trial Tr. 10/26/17 at 70-71; Trial Ex. 36.

In 2015, Conille was once again nominated to serve on the Executive Board of Council 93 and won. Trial Tr. 10/26/17 at 113. He is currently serving a four-year term until 2019. Id. at 114. After Council 93 deactivated Local 402, it transferred Conille to Local 646. Id. at 28. On June 10, 2017, Council 93's Executive Board had one of its scheduled meetings. Id. at 128. Conille claims that at the end of the meeting President Charles Owens and Vice President Kevin Hanley informed him that it would be his last meeting. Id. at 128-129. They explained that he could not sit as a representative of Local 402 because he was now a member of Local 646. Id. at 129. They further explained that because Local 646 already had a representative from the Local on the Executive Board, Conille could not sit as a representative of Local 646, and therefore he could no longer sit on the Executive Board. Id. Following the discussion, Conille sent a letter to the President and Vice President, arguing that their actions were unconstitutional and demanding he be allowed to finish his term as required by the Constitution. Trial Ex. 22. He then received a letter back

from the President denying that he ever told Conille he would be removed, but that the status of his seat on the Executive Board would be discussed at the next scheduled Executive Board meeting. Trial Ex. 23.

### III. RULINGS OF LAW

The Plaintiffs claimed that the Defendants violated the equal voting rights provisions of the AFSCME Constitution, Bill of Rights, ¶ 7, and 29 U.S.C. § 411(a)(2) and 29 U.S.C. § 185; wrongfully dissolved and deactivated Local 402, in violation of section 101(a)(2) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2), 29 U.S.C. § 185, the AFSCME Constitution, Bill of Rights, and the common law of Massachusetts; retaliated against Conille for the exercise of free speech, in violation of sections 101(a)(1) and (2) of the LMRDA, 29 U.S.C. §§ 411(a)(1)-(2), 401(c), (e), 481(e), 609, and 529, the AFSCME Constitution, Bill of Rights ¶¶ 2 and 7, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and violated the Plaintiffs' "due process in discipline," in violation of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), Article X of the AFSCME Constitution, the LMRA, 29 U.S.C. § 185, and the common law of Massachusetts. Am. Compl. ¶¶ 23-142, ECF No. 25.

The Defendants denied the allegations and advanced a counterclaim, arguing that the Plaintiffs breached the AFSCME

Constitution after they failed to return funds and properties of Local 402 after being demanded to do so, in violation of the LMRA, 29 U.S.C. § 185. The Court makes the following rulings of law.

A.  **Equal Voting Rights**

After carefully reviewing the facts of the case and evidence presented at trial, the Court found that the Plaintiffs prevailed as to their claim on count I. It found that Council 93 violated the governing statutes and the AFSCME Constitution's Bill of Rights requiring adequate representation.

Based on the evidence presented at trial, the Court found that proportionality of representation on Council 93 simply did not exist. Representation seems to be nothing more than a hodge-podge of historic deals made as unionized employees became locals within AFSCME. According to the Defendants' own records, the legislative district of "Other State [Employees]" had the highest number of board seats in July of 2016. It had 2,500 paying members in Council 93 and seven board seats representing its members. Trial Ex. 40. Other legislative districts with the same number of dues-paying members, Essex County and New Hampshire, only had four and two board seats respectively. Id. The DDS had the highest number of dues-paying members: viz. 4,400 members. Id. Yet it only had four board seats allocated to it. Id. The legislative district of the Department of

Mental Health, the district with the lowest number of members, 1,500, also had four board seats allocated to it. Id.

The situation continued as of October 26, 2017. See Trial Ex. 41. Other State continued to have the highest number of board seats, seven, with only 2,494 paying members, while other districts similarly situated in member size only had between two and four board seats. Id. Essex County had 2,586 members and four board seats, Middlesex County had 2,763 members and four board seats, Western MA had 2,159 members and two board seats, Maine had 2,468 members and two board seats, and New Hampshire had 2,532 members and two board seats. Id. Higher Education had the highest number of members, 4,704, but only three board seats, while DMH had the lowest number of members, 1,279, and four board seats. Id. The chart below makes the point succinctly:



**Total Members v. Board Seats**

As the Court mentioned prior to trial, strict proportionality is not required, yet still there must be a neutral principle that would justify the gross disproportionality between membership and board seats on Council 93 allocated to the legislative districts. The Defendants failed to furnish a neutral principle to explain the disproportionality. Indeed, they made no attempt whatsoever to justify the disparities. This Court, therefore, ruled that the representatives did not have equal representation and the Plaintiffs prevailed on count I. Trial Tr. 12/04/17 at 4-5. The Court ordered that Council 93's Executive Board reconstitute

[14]

itself within one year so that there may be proper proportional representation for its constituent locals and members. Id.

B. **The Constitutionality of the Deactivation of Local 402**

When the Court ruled against the Plaintiffs on count II at the summary judgment stage, it decided that the interpretations of the AFSCME Constitution, as advanced by Council 93, were reasonable and ruled that the Court would defer to them moving forward. The factual question remained whether the deactivation of Local 402 constituted a violation of the AFSCME Constitution and its Bill of Rights, the LMRA, 29 U.S.C. § 185, or the common law of Massachusetts. This Court found that the Plaintiffs did not meet their burden of proving that Local 402 was improperly deactivated. Id. at 7; see Lilienthal's Tobacco v. United States, 97 U.S. 237, 266 (1877) ("[T]he general rule is that the burden of proof in civil cases lies on the party who substantially asserts the affirmative of the issue . . . ."); Santana v. United States, 572 F.2d 331, 335 (1st Cir. 1977) ("The plaintiff has the burden of proof and the trial judge may find that the testimony does not carry that burden.").

The Plaintiffs attempted to proffer evidence that after they were told that Local 402 would be deactivated, they attempted to exercise their right to an appeal of that decision to the International Executive Board, as prescribed in Article V, section 6 of the AFSCME Constitution. See Trial Tr. 10/26/17

[15]

at 127:5-24; Trial Ex. 1 at 43. They claimed that the International Executive Board never notified them of their right to an appeal. Trial Tr. 10/26/17 at 127:21-24.

The Court expresses no opinion as to the Plaintiffs' right to an appeal. The evidence, however, fails to show that the Plaintiffs ever requested a formal appeal to the International Executive Board. After Bernard contacted Conille to inform him of Council 93's recommendation to deactivate Local 402, McKinnon wrote to President Saunders of the AFSCME International. See Trial Tr. 10/27/17 at 114:21-16:18. In the letter, McKinnon asked President Saunders to reject Bernard's recommendation to deactivate Local 402, and requested "an opportunity to meet with [President Saunders] directly, or with a personal representative." Trial Ex. 12. McKinnon then sent a letter to Moroney, asking that he stop the deactivation process for Local 402. Trial Ex. 14. McKinnon also filed charges with the AFSCME International Judicial Panel against Bernard and Council 93 for interfering with their abilities as officers of Local 402. Trial Ex. 13. The Court finds these letters and communications are not proper requests to invoke an appeal to the International Executive Board. Trial Exhibit 13 in particular is not a charge against Council 93 and Bernard for deactivating Local 402, but for Bernard's action in contacting employers and instructing them not to collect dues payments for Local 402.

[16]

Conille testified that in a letter sent to the Secretary Treasurer of the AFSCME, from Attorney Stern, they requested that the International Executive Board review the legitimacy of the deactivation of Local 402. Trial Tr. 10/26/17 at 127:5-17; Trial Ex. 18. Conille argued that this letter was also a request for appeal to the International Executive Board. Id. The Court disagreed. The letter actually states that "[i]f the [AFSCME International] President and [the International] Executive Board ever issue such a notification, be assured that my Client will exercise the right to appeal for a hearing before the [International] Executive Board." Trial Ex. 18. It goes without saying that proclaiming one will exercise one's right to an appeal is not the same as actually exercising that right. Therefore, Attorney Stern's letter is not a proper request for an appeal to the International Executive Board.

Furthermore, this Court found that Local 402 was properly deactivated in accordance with the AFSCME Constitution and other applicable statutes. The Defendants claimed that Local 402 was deactivated because "[t]here [were] no employees working within the jurisdiction of Local 402." Trial Ex. 38. The Court defers to the Defendants' reasoning for deactivating the local.

C. **Retaliation for Exercise of Free Speech**

In counts III and IV, the Plaintiffs argued that the Defendants retaliated against them for their exercise of free

speech. In count III, the Plaintiffs claimed that the Defendants deactivated Local 402 because Conille criticized the racial makeup of Council 93's Executive Board. The Plaintiffs failed to put forth any evidence to sustain this claim. The evidence at trial suggested that Local 402 was deactivated, not because of Conille's criticisms, but because the main employer of Local 402 members had closed its facilities so that there were no longer "employees working within the jurisdiction of Local 402." Trial Ex. 38.

In count IV, the Plaintiffs argued that the Defendants were retaliating against Conille for his criticisms by not allowing him to finish his elected four-year term on the Executive Board and removing him with two years remaining. The Court disagreed. Conille testified at trial that he is currently serving on the executive board until his term ends in 2019. Trial Tr. 10/26/17 at 114:1-4, 132:22-133:4. He alleged that the President of Council 93, Charles Owen, and the Vice President, Kevin Hanley, spoke to him and told him that he would be losing his seat on the Executive Board because he could no longer represent Local 402, and because Local 646, Conille's new local, already had a representative on the executive board. Trial Tr. 10/26/17 128:20-129:6. He claimed the President reiterated this information in a letter to Conille. Trial Ex. 23. The letter, however, does not corroborate Conille's assertions. In the

letter, President Owen denied saying that Conille would no longer serve on the Executive Board. Rather the letter states that "[his] service on the Executive Board of the Council presents an issue" because he is a member of a new board which already has a member representative on the Executive Board. Id. The letter then states that Owen did not "unilaterally remov[e] [Conille] from [his] Executive Board seat" and that "the question of [his] continued service" would be discussed at the next executive board meeting. Id. The Court cannot speculate as to what the Executive Board will do in its meeting with respect to Conille. Conille's claim is premature because as far as Conille knows, he is currently serving his term and there is no evidence to suggest that he has been denied the opportunity to do so.

### D. Due Process

In count V, the Plaintiffs claimed that Conille's due process rights were violated because he is being threatened with removal from his elected office. This Court found for the Defendants on this count because, as explained above, the evidence presented at trial indicates the contrary.

### E. Counterclaim

The Defendants filed a counterclaim with their answer, claiming that the Plaintiffs breached the AFSCME Constitution by failing to return funds and properties of Local 402 to the

AFSCME. Def.'s Answer and Counterclaim 20, ECF No. 42. The Court finds the counterclaim is moot because the Plaintiffs already agreed at trial to return the funds. See Trial Tr. 10/26/17 at 161:9-15.

## IV. CONCLUSION

For the foregoing reasons, judgment entered in favor of the Plaintiffs as to count I, in favor of the Defendants on the rest of the counts. The counterclaim was dismissed.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE